# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WEST CHESTER UNIVERSITY | : | |
| FOUNDATION | : | |
|     Plaintiff | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 15-3627 |
| | : | |
| METLIFE INSURANCE CO. | : | |
| OF CONNECTICUT | : | |
|     Defendant | : | |

Jones, II    J.

April 13, 2017

## MEMORANDUM

       Defendant MetLife Insurance Company is an insurance provider from which Plaintiff West Chester University Foundation purchased two variable life insurance policies. Plaintiff alleges that Defendant fraudulently represented that after making six out of pocket payments on each policy, Plaintiff would never have to make another payment. Defendant allegedly assured Plaintiff that investments associated with the policies would yield sufficient returns to cover the cost of all future premiums. Plaintiffs made the six out of pocket payments on each policy, but the investments associated with the policies did not perform as projected, and were insufficient to cover the remaining payments owed. Based on the foregoing, Plaintiff brings suit against Defendant for fraud, fraud in the inducement, negligent misrepresentation, promissory estoppel, bad faith, and unjust enrichment. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant moves to dismiss each count of the Amended Complaint. For the reasons that follow, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

The court accepts Plaintiff's allegations as true at the motion to dismiss stage and therefore recites the facts as alleged by Plaintiff.

Plaintiff is a Pennsylvania based nonprofit corporation that, as part of its charitable purpose and through fundraising activities, donates resources to prospective contributors. (Am. Compl. ¶ 5, 9.) Defendant developed a vanishing premium scheme for flexible premium variable life insurance policies and advanced the scheme through misleading and false representations. (Am. Compl. ¶ 10, 13) Specifically, Defendant represented that future premium payments would vanish after the "out of pocket" payment of a limited number of premiums, because investments made in connection with the accounts would yield returns sufficient to cover the future payments. (Am. Compl. ¶ 12). Plaintiff relied on such representations and thus procured two MetLife Flexible Premium Variable Life Insurance policies ("Policies") with the Foundation as the owner and beneficiary of the Policies. (Am. Compl. ¶ 24-25.) The Policies have not delivered in accordance with MetLife's projections, representations, and warranties, or in accordance with the reasonable expectations of the Foundation. (Am. Compl. ¶ 31.) The annual premiums never vanished and as such, the Policies will lapse unless Plaintiff continues to pay the annual premium for each. (Am. Compl. ¶ 32-33). Plaintiff therefore brings suit against Defendant under Pennsylvania law for fraud, fraud in the inducement, negligent misrepresentation, promissory estoppel, bad faith, and unjust enrichment. (Am. Compl.¶ 36-72). Presently before this Court is Defendant's Motion to Dismiss each of Plaintiff's claims, Plaintiff's Response in Opposition, and Defendant's Reply.

**LEGAL STANDARD**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). After the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

Because Counts I and II of the Amended Complaint allege fraud, they are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). United States ex rel. Whatley v. Eastwick Coll., 657 F. App'x. 89, 94 (3d Cir. 2016). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The aim of this heightened pleading standard is to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 7 742 F.2d 786 (3d Cir. 1984). "Rule 9(b) requires, at minimum, that plaintiffs support their allegations of…fraud with all of the essential background facts that would accompany the first

3

paragraph of any newspaper story – that is the who, what, when, where, and how, of the events at issue." In re Rockefeller Ctr. Props. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002) (internal citations omitted).

**DISCUSSION**

In its Response to Defendant's Motion to Dismiss, Plaintiff alleges that Defendant's Motion was filed out of time, and should consequently be denied as time barred. (Resp., 2). Plaintiff filed the Amended Complaint on June 20, 2016 and Defendant filed its Motion to Dismiss on July 7, 2016. Despite Plaintiff's contentions to the contrary, Defendant's Motion was timely, as Federal Rule of Civil Procedure 6(d) afforded Defendant a total of seventeen days to file any responsive pleading, if said pleading would be filed electronically – as the present Motion was. Having established the timeliness of Defendant's Motion, the court now considers each ground upon which Defendant contends that Plaintiff's Amended Complaint should be dismissed.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant moves to dismiss each claim advanced in Plaintiff's Amended Complaint. Defendant argues that all of Plaintiff's claims are procedurally barred by the applicable statutes of limitations and that each count of the Amended Complaint fails to substantively state a claim upon which relief can be granted. In the sections that follow, the court considers Defendant's procedural challenge to the Amended Complaint, and each of Defendant's substantive challenges to the Amended Complaint in turn.

**I.      Plaintiff's Claims are not Procedurally Barred by the Applicable Statutes of Limitations**

As a procedural matter, Defendant argues that all of Plaintiff's claims are time barred by the applicable statutes of limitations. (Mot., 3). Pursuant to 42 Pa.C.S. § 5524, Plaintiff's fraud, fraud in the inducement, and negligent misrepresentation claims are subject to a two-year

statute of limitations; pursuant to 42 Pa.C.S. § 8371, Plaintiff's bad faith claim is also subject to a two-year statute of limitations; and pursuant to 42 Pa.C.S. § 5525, Plaintiff's promissory estoppel and unjust enrichment claims are subject to a four-year statute of limitations. According to Defendant, the Policies at the heart of this action were executed in November of 2002 and March of 2003. (Mot., 3). As Plaintiff was entitled to annual policy statements – each of which outlined the cash value of each policy, the premiums paid in the previous year, and the total loan account value – Defendant argues that Plaintiff should have known in 2009 and 2010 respectively, that Plaintiff's six out of pocket payments had not yielded sufficient returns to cover the remaining payments owed on the Policies. (Mot., 5). Upon consideration of all the applicable statutes of limitations, Defendant argues that Plaintiff's fraud, fraud in the inducement, negligent misrepresentation, and bad faith claims were barred as of 2011 for the November 2002 Policy, and 2012 for the March 2003 Policy, and that Plaintiff's promissory estoppel and unjust enrichment claims were procedurally barred as of 2013 and 2014, respectively. (Mot., 3-5).

Statutes of limitations require "aggrieved individuals to bring their claims within a certain time of injury so that the passage of time does not damage the defendant's ability to adequately defend against the claims made." Dalrymple v. Brown 701 A.2d 164, 167 (Pa. 1997). The applicable statute of limitations begins to run as soon as the right to initiate and maintain a suit arises. Id. But the discovery rule is an exception to the requirement that a complaining party must file suit within the statutory period. Id. "The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." Baselice v. Franciscan Friars Assumption BVM Province, 879 A.2d 270, 276 (Pa. Super. Ct. 2005). (internal citations omitted). The Pennsylvania Supreme Court has held that the discovery rule applies to toll the statute of

5

limitations in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to initiate suit arises, regardless of whether the underlying injury was discoverable before the end of the prescribed limitations period. Id. Under the discovery rule, the statute of limitations begins at the exact point at which, exercising reasonable diligence, the aggrieved should have ascertained the fact of a cause of action. Haines v. Jones 830 A.2d 579, 585 (Pa. Super. Ct. 2003). If the plaintiff has the means of discovery within its power but neglects to use them, the plaintiff's claim will be barred. Id.

Plaintiff argues that it was not until it received the Lapse Notice in May of 2014, which informed Plaintiff that the Policies were in danger of lapsing for want of payment, that Plaintiff became aware that it was required to make more than the six out of pocket payments. Plaintiff filed suit a year thereafter, which by Plaintiff's logic was well within all applicable limitations periods. (Resp., 5). In contrast, Defendant maintains that reasonable review of the policy statements sent to Plaintiff annually would have alerted Plaintiff to the fact that the investment returns were not performing well enough to cover the cost of future premium payments. (Mot., 5). As neither Defendant nor Plaintiff attached a copy of any one of the account statements reportedly sent to Plaintiff each year, on November 14, 2016, this Court ordered Defendant to electronically file the account statement to which it referred in its Motion.

Upon thorough and diligent review of the policy statement submitted by Defendant on December 2, 2016, this Court was unable to ascertain any reasonable means by which the average consumer could determine how well investment returns were performing or how likely it would be that the investment returns would cover future premium payments. The statements were complex, rife with confusing internal cross-references, and did not conspicuously relay the success or lack thereof of the investment returns associated with the Policy. This Court finds that a reasonable

review of the annual statements would not have alerted Plaintiff to the falsity of Defendant's alleged statements regarding the vanishing premium scheme, and therefore concludes that only upon receipt of the November 2014 Lapse Notice was Plaintiff alerted to its injury. Because Plaintiff filed the present action within a year of ascertaining its right to initiate and maintain suit, this Court finds that Plaintiff's claims are not procedurally barred by the applicable statutes of limitations.

## II. Defendant's Motion to Dismiss is Granted as it Relates to Counts IV and VI and Denied as it Relates to Counts I, II, III, and V.

In addition to Defendant's assertion that the applicable limitations periods bar each of Plaintiff's causes of action, Defendant's Motion to Dismiss includes substantive challenges to each claim advanced within the Amended Complaint. The court considers each of Defendant's substantive challenges to the Amended Complaint in turn, and for the reasons that follow, Defendant's Motion is granted with respect to Counts IV and VI of the Amended Complaint, and denied with respect to Counts I, II, III, and V of the Amended Complaint.

### 1. Defendant's Motion is Denied as it Relates to Count I of the Amended Complaint.

The first count of the Amended Complaint advances Plaintiff's claim of fraud and alleges that Defendant intentionally employed sales techniques that omitted and concealed the material risks of Defendant's vanishing premium policy scheme. (Am. Compl., ¶ 36-43). The first of Defendant's substantive challenges to the Amended Complaint alleges that Plaintiff's claim of fraud should be dismissed because Plaintiff failed to plead facts that establish the elements of fraud under Pennsylvania law with sufficient specificity to satisfy the Rule 9(b) standard. As noted above, Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To prove fraud under Pennsylvania law requires a showing of the following elements: "(1) a representation; (2)

which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Gibbs v. Ernst, 538 Pa. 193, 207 (Pa. 1994). Defendant argues that Plaintiff failed to identify the substance of the alleged false statements at the core of Plaintiff's case, failed to establish with particularity that Defendant had any knowledge of the falsity of its statements at the time they were made, and failed to plead sufficient facts to establish that Plaintiff's reliance on Defendant's allegedly false statements was justified. (Mot., 7). This Court disagrees, and finds that Plaintiff sufficiently pleads its claim against Defendant for fraud.

"A district court must consider a complaint in its entirety without isolating each allegation for individualized review." In re Processed Egg Prods. Antitrust Litig., 821 F.Supp. 2d 709, 737 (E.D. Pa. 2011) (internal citations omitted). Reading the Amended Complaint *in toto*, it is unclear on what grounds Defendant bases its assertion that the facts establishing fraud are not pled with specificity. Despite Defendant's arguments to the contrary, the facts as alleged clearly delineate each of the requisite elements of fraud under Pennsylvania law, and the substance of the Defendant's alleged falsehoods, Defendant's knowledge of the falsity of its alleged misrepresentations, and the basis for Plaintiff's reliance are specifically identified in the body of the Amended Complaint. Plaintiff recalls – with particularity – the statements allegedly made by Defendant's agents regarding the cost and coverage of the Policies at issue. (Am. Compl., ¶ 11). Plaintiff sufficiently – and repeatedly – alleges Defendant's knowledge of the falsity of its statements and the likelihood that Plaintiff would detrimentally rely on those statements. (Am. Compl., ¶ 15-16, 41). Plaintiff specifically alleges that it reasonably relied on Defendant's representations regarding the vanishing premiums, and details a basis for said reliance. (Am. Compl., ¶ 42, 18). Finally, Plaintiff specifically alleges the harm that resulted from Plaintiff's

8

reliance on Defendant's alleged misrepresentations. (Am. Compl. ¶ 34). It is unclear what more Defendant expected from the Plaintiff's pleadings, but this Court is satisfied that Plaintiff has met the heightened pleading standard of Rule 9(b) and sufficiently alleged its Pennsylvania state law claim of fraud. This Court therefore denies Defendant's Motion to Dismiss as it relates to Count I of the Amended Complaint.

> **2. Defendant's Motion is Denied as it Relates to Count II of the Amended Complaint.**

Count II of the Amended Complaint advances Plaintiff's claim against Defendant for fraud in the inducement. Plaintiff alleges that Defendant fraudulently induced Plaintiff into purchasing the Policies at issue by knowingly making false representations about the nature of the vanishing premiums scheme and the risks associated therewith. (Am. Compl., ¶ 44-48). Defendant's second substantive challenge to the Amended Complaint argues that Plaintiff's claim must be dismissed because Pennsylvania's parol evidence rule bars claims for fraud in the inducement where there exists a fully integrated contract between the parties.

Where parties deliberately put their agreement in writing, the parol evidence rule functions to bar the admission of "all preliminary negotiations, conversations, and verbal agreements" to contradict, modify, or otherwise alter the unambiguous terms of a fully integrated, written contract. Toy v. Metro. Life Ins. Co., 928 A.2d 186, 204 (Pa. 2007). As a preliminary matter, it is unclear whether the parol evidence rule applies to insurance related claims for fraud in the inducement in Pennsylvania. On the one hand, Defendant's Motion highlights numerous cases – one of which notably involved an insurance contract dispute – in which courts held that in Pennsylvania, the parol evidence rule applies to bar claims of fraud in the inducement. (Mot., 12-13) . On the other hand, Plaintiff points to Pennsylvania's well documented history of distinguishing insurance contracts from other commercial contracts to which traditional contract

principles would apply, and instead employing the doctrine of reasonable expectations to resolve insurance contract disputes. (Resp., 13-14). In the cases Plaintiff references, the insured's "reasonable expectations" dictated the proper focus for determining issues of insurance coverage, despite the clarity of the insurance policy's language. See Huu Nam Tran v. Metro. Life Ins. Co., 408 F.3d 130, 136 (3d Cir. 2005) (considering an insurance policy nearly identical to the one presently at issue and holding that, "in certain situations, the insured's reasonable expectations will be allowed to defeat the express language of an insurance policy.") (quoting Bensalem Twp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1309 (Pa. 1983); Am. Gen. Life Ins. Co. v. Shenkman, 455 F.App'x 263, 264 (3d Cir. 2011) ("Even the most clearly written exclusion will not bind the insured where the insurer or its agent created in the insured a reasonable expectation of coverage."). Where the doctrine of reasonable expectations applies, Pennsylvania courts examine the totality of the circumstances to ascertain the reasonable expectations of the insured, including oral assertions made prior to the execution of the insurance contract. Am. Gen. Life. Ins. Co., 455 F.App'x at 264.

Recognizing, as other courts have, that insurance contracts are neither freely negotiated nor easily digestible by most reasonable consumers, this Court is inclined to accept Plaintiff's assertion that traditional contract principles should not apply and that Plaintiff should be permitted to introduce its parol evidence. But the legal terrain in this area is rocky to say the least, and this Court is reluctant to toe a line that even the Third Circuit struggled to find. See Tran, 408 F.3d at 136 ("[W]e were unable to draw any categorical distinction between the types of cases in which Pennsylvania courts will allow the reasonable expectations of the insured to defeat the unambiguous language of an insurance policy and those in which the courts will follow the general rule of adhering to the precise terms of the policy.") (quoting Bensalem, 38 F.3d at 1311).

Ultimately, even if the parol evidence rule generally applies to insurance related claims of fraud in the inducement in Pennsylvania, its application would be inapposite in the present instance.

As earlier stated, where it applies, the parol evidence rule functions to bar the admission of prior oral representations intended to contradict, modify, or otherwise alter the *unambiguous* terms of a fully integrated contract. Toy, 928 A.2d at 204. The application of the parol evidence rule to claims of fraud in the inducement is intended to prevent parties from claiming to have relied on oral representations of which the executed contract *conspicuously* lacks evidence. Diadato v. Wells Fargo Ins. Servs., USA, 44 F.Supp 3d 541, 567 (M.D. Pa 2014) ("[A] party cannot justifiably rely upon prior oral representations, yet sign a contract denying the existence of those representations."). But where the contractual language at issue is ambiguous, and is thus not conspicuously at odds with the oral representations on which the plaintiff claims to have relied, the parol evidence rule is not implicated.

Construing the pleaded facts as true, Defendant assured Plaintiffs that future premium payments would vanish after the out of pocket payment of a limited number of premiums, because investments made in connection with the accounts would yield returns sufficient to cover the future payments. (Am. Compl. ¶ 12). Defendant asserts that the Policies do not mention that any premiums will vanish and that the policy illustrations state that the hypothetical rates of return are illustrative only, not guaranteed. (Mot., 1, 13). Defendant maintains that because the Policies constitute fully integrated contracts and the language of the Policies and policy illustrations are unambiguous, the parol evidence rule applies to preclude the admission of any evidence of promises made prior to the Policies' execution. (Mot., 13). That the Policies constitute fully integrated contracts is not disputed, but this Court finds that the Policies' language is ambiguous and therefore not subject to the proscriptions of the parol evidence rule.

"Contractual language is ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense." Alleman v. State Farm Life Ins. Co., 334 F.App'x 470, 472 (3d Cir. 2009). The Third Circuit has made it clear that "a policy provision stating that premiums are payable for a certain number of years could be read by a reasonable unsophisticated insured as being completely consistent with the agents' alleged representations that the premiums paid by plaintiffs for a limited time, in combination with policy interests and dividends paid, would be sufficient to cover future premiums." Huu Nam Tran, 408 F.3d at 138 (internal citations omitted). Where insurance sales agents stated that "premiums would vanish after a period of time but at the same time used illustrations cautioning that dividend calculations were not guaranteed (as occurred here), reasonable minds could differ as to whether those statements were necessarily inconsistent with the agents' alleged representations that [Plaintiff's] premium payments would vanish and would not increase at any time." Id. (quoting Knouse v. Gen. Am. Life. Ins. Co., 391 F.3d 907, 913 (8th Cir. 2004)); See also, Wyckoff v. Metro. Life. Ins. Co., 2005 U.S. App. LEXIS 24990 (3d Cir. November 17, 2005) ("In addition, we have held that the statement, 'the results are not guaranteed,' contained either within the policy or in the illustrations, is not directly inconsistent with or contradictory to a policyholder's belief in the vanishing premium nature of the policy."). If reasonable minds could differ as to (1) the meaning of the Policies' provisions regarding payable premiums, and (2) as to whether the caveat in the policy illustrations contradict Defendant's alleged representations about vanishing premiums, the Policies cannot be regarded as unambiguous. If the Policies at issue are not unambiguous, the parol evidence rule cannot be employed to bar evidence that could resolve the ambiguity.

For the foregoing reasons, even if the parol evidence rule were to generally apply to insurance related Pennsylvania claims of fraud in the inducement, its application would be

inapposite here. As this is the only basis upon which Defendant challenges Plaintiff's claim of fraud in the inducement, this Court denies Defendant's Motion to Dismiss as it relates to Count II of the Amended Complaint.

### 3. Defendant's Motion is Denied as it Relates to Count III of the Amended Complaint.

The third count of the Amended Complaint alleges that Defendant negligently misrepresented that the annual premiums on the Policies would vanish after six out of pocket payments. (Am. Compl. ¶ 54-55). In its third substantive challenge to the Amended Complaint, Defendant moves to dismiss Plaintiff's claim of negligent misrepresentation on the grounds that liability for negligent misrepresentation cannot be based on a defendant's representations about future occurrences. (Mot., 14). For the reasons that follow, this Court finds that this case falls within the exception to the general rule that negligent misrepresentation claims cannot be based on statements regarding future events.

"Negligent misrepresentation requires proof of: (1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." Bortz v. Noon, 729 A.2d 555, 561(Pa. 1999). To support its argument in favor of dismissing Count III of the Amended Complaint, Defendant cites to an Opinion authored by the Honorable J. Curtis Joyner. In Bennett v. Itochu International, Inc., the court held that with claims of negligent misrepresentation there can be no exception to the rule that the challenged misrepresentation be of a present fact and not a future intention. 682 F.Supp. 2d 469, 480 (E.D. Pa. 2010). Judge Joyner reasoned that a promisor cannot be negligent about his future intentions to act; if at the time the promisor communicated his future intention, the promisor knew he did not so intend, that misrepresentation was knowing and intentional, not negligent. Id.

at 481. Defendant's argument in favor of dismissing Plaintiff's negligent misrepresentation claims relies almost entirely on Bennett, but both this Court and presumably Judge Joyner recognize that the facts of Bennett are materially distinguishable from that of the case at bar.

In the present case, Plaintiff's negligent misrepresentation claim is not based on Defendant's alleged representations about its own intended actions. Construing the pleaded facts as true, Defendant's representations related to the future performance of investments of which Defendant purported to have specialized knowledge, and the effect thereof on the premiums Plaintiff owed. About eleven years before his Opinion in Bennett, Judge Joyner carved out an exception to the general rule disallowing negligent misrepresentation claims based on representations of future occurrences. "[I]f [Defendant] made statements about future occurrences…which [Defendant] should have known [were] untrue or unlikely to occur, and [Defendant] failed to exercise reasonable care in communicating this information, then negligent misrepresentation has occurred." Killian v. McCulloch, 850 F.Supp. 1239 (E.D. Pa. 1994).

Plaintiff's pleaded facts fall squarely within this exception. Plaintiff alleges that Defendant affirmatively represented that the investments made using Plaintiff's out of pocket premium payments would yield such high returns that they would cover all future payments owed on the Policies. (Am. Compl., ¶ 53). Plaintiff alleges that Defendant artificially inflated investment return projections and that Defendants knew or ***should have known*** that their representations were without a reasonable basis. (Am. Compl., ¶ 37, 55) (emphasis added). Moreover, Plaintiff alleges that Defendant held its agents out as "highly skilled insurance experts and financial consultants, possessing the special knowledge and expertise needed to interpret and understand the complex and sophisticated funding methods and mechanics of the vanishing premium policies." (Am. Compl., ¶ 18). Taken together, the pleaded facts certainly support the application of Judge

14

Joyner's exception and present a cognizable claim of negligent misrepresentation. Based on the foregoing, this Court denies Defendant's Motion to Dismiss as it relates to Count III of the Amended Complaint.

### 4. Defendant's Motion is Granted as it Relates to Count IV of the Amended Complaint.

The fourth count of the Amended Complaint advances Plaintiff's claim for promissory estoppel. Plaintiff alleges that Defendant promised Plaintiff that the Policies would yield certain investment returns that would cover the costs of future policy premiums, and that Plaintiff relied on these promises to its detriment. (Am. Compl., ¶ 60-63). The fourth of Defendant's substantive challenges to the Amended Complaint seeks dismissal of Plaintiff's claim for promissory estoppel on the grounds that in Pennsylvania, promissory estoppel claim can only exist in the absence of a contract. This Court agrees.

Promissory estoppel is an equitable remedy traditionally used to enforce a promise in the absence of bargained-for consideration. Bull Int'l, Inc. v. MTD Consumer Grp., Inc., 654 F.App'x 80, 100 (3d Cir. 2016). Promissory estoppel is appropriate where "(1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise." Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 416 (3d Cir. 1990). Under Pennsylvania law, "an enforceable contract between two parties precludes relief for a claim of promissory estoppel." ISObunkers, L.L.C. v. Easton Coach Co., 2010 U.S. Dist. LEXIS 11201*1, *13 (E.D. Pa. February 9, 2010); Carlson, 918 F.2d at 416 ("In light of our finding that the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted."). Plaintiff acknowledges the existence of two contracts – namely the Policies – between itself and Defendant, and does not affirmatively challenge either contract's validity. To

the contrary, Plaintiff explicitly moves for this Court to enforce the terms of the Policies for the life of the insureds. (Am. Compl. ¶ 64). As Plaintiff does not contest the validity of the Policies at issue, this Court must dismiss Plaintiff's claim for promissory estoppel as a matter of law. See, Cornell Cos. V. Borough of New Morgan 512 F.Supp. 2d 238, 266 n. 19 (E.D. Pa. 2007) ("[a] finding of a valid contract would prevent a party from recovering for either [promissory estoppel or unjust enrichment].")(quoting Comcast Spectator L.P. v. Chubb & Son, Inc., 2006 U.S. Dist. LEXIS 55226 *1, *81 (E.D. Pa. Aug. 8, 2006).

Plaintiff argues that the Pennsylvania rule precluding promissory estoppel claims where a valid contract exists is inapplicable in the present instance. (Resp., 18). Plaintiff claims that the basis of its claim for promissory estoppel is a representation made outside the context of the written contract – specifically that the annual premiums would vanish after the payment of a discrete number of policy premiums. (Resp., 18). Plaintiff correctly concludes that if this Court were to find that the promises upon which Plaintiff based its claim for promissory estoppel were separate and distinct from the substance of the contract, Pennsylvania law would not preclude Plaintiff's claim. Northeastern Power Co. v. Balcke-Durr, Inc., 1999 U.S. Dist. LEXIS 13437 *1 (E.D. Pa. August 20, 1999)(allowing a promissory estoppel claim where the alleged promises at issue were made separate and apart from the parties' express, written agreement). But this Court cannot so find. In the present instance, the alleged statements regarding the vanishing premiums were made prior to or contemporaneous with the execution of the contracts, and the number of premium payments necessary to sustain each of the Policies is clearly a subject within the purview of the existing contracts. As such, this Court rejects Plaintiff's assertion that its promissory estoppel claim arises outside the context of the valid, express contracts that exist between the parties. Because valid contracts exist between Plaintiff and Defendant, this Court must grant Defendant's Motion to Dismiss as it relates to Count IV of the Amended Complaint.

## 5. Defendant's Motion is Denied as it Relates to Count V of the Amended Complaint.

Count V of the Amended Complaint advances Plaintiff's claim of bad faith under 42 Pa.C.S. § 8371. Plaintiff alleges that Defendant intentionally reduced its investment return projections in order to conceal the risks associated with its vanishing premium scheme and to secure additional premium payments on the Policies. (Am. Compl., ¶ 65-68). Defendant's fifth substantive challenge to the Amended Complaint seeks dismissal of Plaintiff's bad faith claim on the grounds that the Amended Complaint fails pleading standards and bad faith claims are not available where there are allegations of deceptive practices in soliciting the purchase of a policy. (Mot., 16). As a preliminary matter, this Court rejects Defendant's argument that Plaintiff fails to sufficiently plead bad faith. Plaintiff specifically identifies the conduct it avers amounts to bad faith, and this Court is satisfied that Plaintiff's factual averments go beyond mere conclusory allegations.

This Court also rejects Defendant's argument that Pennsylvania case law requires dismissal of Plaintiff's bad faith claim. Section 8371 does not itself identify the specific acts that would establish actionable bad faith toward the insured. Kofsky v. Anum Life Ins. Co. of Am., 2014 U.S. Dist. LEXIS 122220 *1, *13 (E.D. Pa. September 2, 2014) (internal citations omitted). Despite the statute's relative silence on the issue, Pennsylvania courts have determined that as it relates to § 8371, bad faith claims generally concern "the duty of good faith and fair dealing in the parties' contract and the manner by which an insurer discharged its obligations of defense and indemnification in the third-party claim context or its obligation to pay for a loss in the first-party claim context." Grudkowski v. Foremost Ins. Co., 556 F.App'x 165, 170 (3d Cir. 2014) (quoting Toy, 928 A. 2d at 199 (Pa. 2007)). As Defendant notes, Pennsylvania courts have concluded that § 8371 "does not give relief to an insured who alleges that his insurer engaged in unfair or deceptive

17

practices in soliciting the purchase of a policy." Id. (internal citations omitted). But despite the Pennsylvania Supreme Court's holding in Toy, which appeared to narrowly limit the circumstances under which a § 8371 claim of bad faith can arise, a number of courts have allowed bad faith claims in contexts beyond an insurer's failure to indemnify or pay the insured. See e.g., Jacoby v. AXA Equitable Life Ins. Co., 2014 U.S. Dist. LEXIS 172917, *1 (E.D. Pa. December 15, 2014); Myerski v. First Acceptance Ins. Co., 2016 U.S. Dist. LEXIS 76201 *1, *14-15 (M.D. Pa. June 10, 2016) ("Bad faith is not restricted to an insurer's denial of benefits and includes a wide variety of objectionable conduct including a lack of good faith investigation and failure to communicate with a client.").

Defendant argues that Plaintiff's bad faith claim fails because the claim is based on allegations of deceptive practices relating to the solicitation and sale of the Policies at issue. While Plaintiff's bad faith claim alleges bad faith conduct related to the sale of the Policies, the claim also alleges deceptive practices occurring after the execution of the Policies. Specifically, Plaintiff alleges that for years *after* the Policies were sold, Defendant manipulated its investment return projections to conceal the true nature of its vanishing premium scheme. (Am. Compl. ¶ 67). It is clear that recent cases have determined that, so long as "Plaintiff's allegations principally concern Defendant's conduct in connection with its discharge of its obligations under the [Policies] *after* purchase by [Plaintiff]," a bad faith claim under § 8371 may be available. Jacoby, 2014 U.S. Dist. LEXIS 172917 at * 11. Because the reach of § 8371 is broader than Defendant argues, this Court is unwilling to dismiss Plaintiff's bad faith claim at the pleading stage. Whether the deceptive conduct alleged by Plaintiff arose in the context of Defendant's discharge of its obligations under the Policies will become more apparent through fact discovery. Because Plaintiff's bad faith claim satisfies the pleading standard, and because it is not yet clear that Plaintiff's claim is barred as a

matter of law, this Court denies Defendant's Motion as it relates to Count V of the Amended Complaint.

### 6. Defendant's Motion is Granted as it Relates to Count VI of the Amended Complaint.

The sixth and final count of the Amended Complaint advances Plaintiff's claim against Defendant for unjust enrichment. Plaintiff alleges that Defendant was unjustly enriched when Defendant retained the premium payments made by Plaintiff on the Policies without delivering on Defendant's alleged promise that future payments would vanish. (Am. Compl., ¶ 70-71). Unjust enrichment is an equitable remedy not unlike promissory estoppel. Where the doctrine of promissory estoppel is applied to make enforceable a promise made by one party that induces action or forbearance on the part of another party, the doctrine of unjust enrichment is a remedy sought when one party received a benefit that would be unconscionable to retain without compensating the provider. Comcast, 2006 U.S. Dist. LEXIS 55226 at *80 (E.D. Pa. Aug. 8, 2006) (internal citations omitted). As seen with Plaintiff's claim for promissory estoppel, Defendant challenges Plaintiff's claim for unjust enrichment on the grounds that Pennsylvania law does not allow for quasi-contractual claims where an express, written contract exists. (Mot., 18). For the reasons stated in the promissory estoppel section above, and those that follow, this Court agrees.

"Under Pennsylvania law, the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon a written agreement or express contract…." Grudkowski, 556 F.App'x at 169-170 (internal citations omitted). Plaintiff attempts to salvage its claim for unjust enrichment by arguing that the claim is advanced as an "alternative avenue of relief" in the event that the court finds that a valid contract does not exist. (Resp., 18). It is unclear on what grounds Plaintiff could believe that this Court would find the absence of a valid contract

when, as explained above, Plaintiff takes no steps to challenge the validity of the contracts – Policies – in existence between the parties. A claim for unjust enrichment is an appropriate alternative to traditional contract claims, but "such alternative pleading is plausible only when the validity of the contract is itself ***actually disputed***, making unjust enrichment a potentially available remedy." Grudkowski, 556 F.App'x at 170 n. 8 (emphasis added). Because Plaintiff does not dispute the validity of the existing contracts, this Court must grant Defendant's Motion to Dismiss as it relates to Count VI of the Amended Complaint. See id. ("Here, [the parties] had a contractual relationship, the existence and validity of which are not challenged. Thus [the plaintiff's] claim for unjust enrichment, even when pled in the alternative, was appropriately dismissed.").

## **CONCLUSION**

For all of the foregoing reasons, Defendant's Motion to Dismiss is GRANTED as it relates to Counts IV and VI of the Amended Complaint, and is DENIED as it relates to Counts I, II, III, and V of the Amended Complaint. Plaintiff is granted to leave to file a second amended complaint within thirty (30) days of the filing of this Opinion.

A corresponding Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II
C. Darnell Jones, II    J.